GREENAWAY, Jr.,
dissenting.
I fear that the majority’s affirmance, while qualified, will lead to the improvident denial of suppression motions in instances when reasonable suspicion, as required by the Fourth Amendment, is absent. When the biases of private citizens may enter into the government’s justification for search and seizure, there is cause for concern. The majority acknowledges that this is “a very close case,” (Majority Op. at 249) but nonetheless finds that police had a sufficient “level of objective justification” for stopping the vehicle in which Dobson and Abney rode. Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (quoting Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). I dissent because the justification for the stop was far from objective. Instead of relying upon “specific and artic-ulable facts” along with “rational inferences from those facts” to determine that reasonable suspicion of criminal activity existed, Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police imported the insufficiently supported belief of a loss prevention detective with no law enforcement experience into their own analysis. We are prohibited from relying on such a “mere hunch,” as we should be. United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citations and internal marks omitted).
Without Richard Verna’s hunch, police would not have been able to reasonably link Dobson and Abney, and without such a link, reasonable suspicion for the stop of the vehicle was absent. Dobson was observed entering the vehicle that was eventually stopped; Abney was not. At the time of the stop, all police knew about Dobson was that he was an African-American resident of New York who had successfully purchased an expensive brand-name handbag. (Majority Op. at 252-53.) Although innocent acts “may collectively amount to reasonable suspicion,” United States v. Nelson, 284 F.3d 472, 480 (3d Cir.2002), without connecting Abney to Dobson, and thus to the vehicle, reasonable suspicion to connect the vehicle to criminal activity would have been absent. Bracketing, for a moment, the import of Verna’s belief that Abney and Dobson were together, the only facts known to police that could serve to link them were: (1) that both haled from New York, a state of more than nineteen million people located within two hours’ drive of the mall; (2) that both were interested in purchasing expensive handbags of the same manufacture from Bloomingdale’s on the same day; and (3) that both were African-American. This hardly seems like a sufficient basis to conclude that they were travelling in the same vehicle and thus working together.[1]
We agree with the majority that Verna was a reliable tipster. (Majority Op. at 251-52.) Nonetheless, even assuming that Verna’s report can be considered completely reliable, we are still permitted to use it only as a source of the “specific and articulable facts,” that, together with “rational inferences from those facts,” must form the basis for reasonable suspicion. Terry, 392 U.S. at 21, 88 S.Ct. 1868. Ver *256 na’s belief that the two men were together, to the extent not supported by facts he provided to the police, cannot be part of our reasonable suspicion analysis. Although Verna’s belief was supported by some additional facts, i.e. that Dobson had made his purchase with suspicious speed and that he and Abney approached the handbag counter separately but close in time, those facts were never conveyed to the police and thus cannot be part of our analysis here.
Put differently, if a police officer had directly observed all three of the specific, articulable facts that Verna conveyed to the police supporting a link between Dobson and Abney, it would not be a “rational inference[] from those facts,” Terry, 392 U.S. at 21, 88 S.Ct. 1868, that Abney was connected to Dobson and thus to the vehicle. The officers’ conclusion that the two men were together, based solely on those facts, would be precisely the type of “mere hunch” upon which the Fourth Amendment prohibits us from relying in order to justify a Terry stop. Arvizu, 534 U.S. at 274, 122 S.Ct. 744. Our jurisprudence is clear that police may trust facts provided by reliable tipsters, but it does not allow tipsters more latitude to insert their assumptions into the Fourth Amendment calculus than it would allow police officers.
For these reasons, I would find that reasonable suspicion for the stop was absent and that all the subsequent searches were thus “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir.1992). As such, I dissent.

. Although the majority's opinion notes that Appellants do not explicitly raise allegations of racial profiling or racial bias, Appellants do not shy away from mentioning their race in the short catalogue of facts used to connect them. (Majority Op. at 253.) Indeed, it is difficult to imagine that these facts would have been deemed sufficient to connect the two men had they not both been members of the same racial minority.